1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SARAH ANNE HENSON,

                    Plaintiff,

         v.

CAROLYN W COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

CASE NO. 3:16-cv-05287-DWC

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff Sarah Anne Henson filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 6.

After considering the record, the Court concludes the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence at Steps Two, Three, and Five, in evaluating the medical evidence, and in assessing Plaintiff's allegations of disabling limitations. Thus, the Commissioner's decision is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On April 30, 2013, Plaintiff filed an application for SSI, alleging disability as of January 1, 2011. *See* Dkt. 9, Administrative Record ("AR") 13. The application was denied upon initial administrative review and on reconsideration. *See* AR 13. A hearing was held before Administrative Law Judge ("ALJ") Mary Gallagher Dilley on August 6, 2014. *See* AR 13, 25. At the hearing, Plaintiff amended her alleged onset of disability to April 30, 2013. AR 13. In a decision dated September 12, 2014, the ALJ determined Plaintiff to be not disabled. *See* AR 13-25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1; 20 C.F.R. § 404.981, § 416.1481.

Plaintiff maintains the ALJ erred by: (1) failing to find  Plaintiff has additional severe impairments at Step Two; (2) failing to find Plaintiff 's impairment equals a Listing at Step Three; (3) improperly rejecting medical opinions; (4) improperly rejecting plaintiff's testimony and statements regarding her impairments; and (5) erring in the Step Five analysis. Dkt. 11, p. 1.

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

**I.    Whether the ALJ erred at Step Two.**

Plaintiff alleges the ALJ erred at Step Two by failing to find nine additional impairments severe at Step Two, including: (1) back pain, (2) knee pain, (3) arthritis, (4) diabetes, (5) shortness

1    of breath, (6) left arm swelling/pain, (7) fatigue, (8) insomnia, and (9) Post Traumatic Stress

2    Disorder ("PTSD"). *See* Dkt. 11, pp. 11-13.

3        Step Two of the administration's evaluation process requires the ALJ to determine whether

4    the claimant "has a medically severe impairment or combination of impairments." *Smolen v.*

5    *Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii),

6    416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the

7    ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work

8    activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking,

9    standing, sitting, lifting, pushing, pulling, reaching, carrying  or handling.'" *Smolen*, 80 F.3d at

10   1290 (quoting 20 C.F.R. §140.1521(b)). "An impairment or combination of impairments can be

11   found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a

12   minimal effect on an individual['s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303,

13   306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

14       At Step Two the ALJ determined Plaintiff has the following severe impairments that are

15   "both medically determinable and cause more than mild limitation": (1) cardiac disease,

16   (2) obesity, (3) panic disorder, and (4) affective disorder. AR 15. The ALJ also noted Plaintiff

17   alleged a number of additional physical and mental impairments, but determined the record does

18   not establish additional impairments. AR 15-16.

19       A.  Back Pain, Knee Pain, and Arthritis

20       The ALJ recognized Plaintiff "complained of back and knee pain, [and] arthritis" but

21   determined Plaintiff has not received any treatment for these alleged impairments. AR 15. The ALJ

22   observed Plaintiff "complained of intermittent pain in her back and knees in June 2013 that she

23

24

1    alleged had worsened in the prior six months" but noted Plaintiff did not take medication to treat

2    the pain and "attributed this to a 20 pound weight gain." AR 15-16. The ALJ also observed:

3         The claimant renewed her chronic knee and back pain complaints in February 2014.
          Examination only showed a slight decrease of strength with flexion. She was sent

4         for imaging, but this was negative. Despite this, the following month, the claimant
          alleged a pain at an eight out of ten on the pain scale. Her pain was attributed to her

5         posture and weight, with 'no red flags.' She was prescribed hydrocodone and
          physical therapy, but had not taken the medication at the next appointment due to

6         fears of becoming addicted. The record evidences no further presentations for these
          complaints.

7
          Given the lack of objective exam findings, definitive diagnosis, and/or treatment, I

8         do not find that these complaints rise to the level of constituting a medically
          determinable impairment, as defined by the regulations. However, I have

9         considered the claimant's complaints relative to her severe obesity.

10   AR 16 (citations omitted).

11        The record shows Plaintiff complained of "pain in both knees and pinching in sacral area of

12   back" in June 2013, which Plaintiff attributed to gaining 20 pounds over a six month period. AR

13   407. In a February 2014 visit to establish care with Dr. Casey Lien, Plaintiff complained of arthritis

14   with symptoms of chronic knee and back pain. AR 408-09. Dr. Lien observed Plaintiff "has no

15   history of trauma …. no locking or clicking of her knee …. no swell[ing]", but noted Plaintiff

16   "does have some pain with walking." AR 409. Following her appointment with Dr. Lien, Plaintiff

17   had an X-ray of her right knee, which was normal with "[n]o radiographic evidence of abnormality

18   of the right knee." AR 412. In March 2014, Plaintiff saw Dr. Lien again and complained of back

19   pain. Dr. Lien opined the back pain was "likely [m]uscles, related to posture, weight, no red flags"

20   and referred Plaintiff to physical therapy for "stretches and strengthening". AR 413. Plaintiff

21   complained of back pain again in April 2014, but had not attended physical therapy as suggested

22   by her doctor. AR 419. At a diagnostic interview at Peninsula Behavioral Health, Plaintiff reported

23   "back pain, stiffness in joints, swelling in joints". AR 438.

24

1    While the evidence of record demonstrates Plaintiff complained of back pain, knee pain,

2  and arthritis at various medical appointments, Plaintiff does not cite to any records—nor has the

3  Court found any—showing any of the aforementioned alleged impairments cause more than "a

4  slight abnormality having more than a minimal" impact on her ability to work. *See Smolen*, 80 F.3d

5  at 1290; Dkt. 11, pp. 11-13. Indeed, although Plaintiff saw Dr. Lien for back pain, knee pain, and

6  arthritis, imaging of Plaintiff's knee was normal, *see* AR 412, and Dr. Lien opined Plaintiff's back

7  pain was likely caused by her obesity. *See* AR 407. None of Plaintiff's doctors opined Plaintiff has

8  limitations related to her ability to work due to back pain, arthritis, and knee pain. As Plaintiff has

9  not shown these impairments caused more than minimal limitations on her ability to work, the

10  Court finds the ALJ did not err at Step Two when she did not find Plaintiff's back pain, knee pain,

11  and arthritis severe impairments.

12    B.   Diabetes

13    The ALJ also noted Plaintiff was diagnosed with diabetes, but observed Plaintiff "testified

14  that she was not taking medication to treat her diabetes, but had made small changes to her diet."

15  AR 16. The ALJ further observed Plaintiff's "A1c tested at 6.9 in May 2014, with a normal range

16  from 4.5 to 6.2 …. [t]hus, the claimant tested within the range that is considered diabetic ….

17  however, no treatment regimen was recommended other than a restrictive diet." AR 16 (citations

18  omitted). Finally, the ALJ noted Plaintiff "did not attribute any symptoms to higher blood sugar

19  levels" and he does "not find diabetes constitutes a severe impairment either." AR 16.

20    Here, Plaintiff's "fasting glucose is in the range that [Dr. Lien] would consider diabetes"

21  but Dr. Lien informed Plaintiff she would retest after her next visit. AR 423. The record does not

22  demonstrate Plaintiff was re-evaluated for diabetes, nor is there any indication diabetes caused

23  more than minimal limitations on Plaintiff's ability to work. *See id.* As Plaintiff has not shown

24

1    diabetes caused more than minimal limitations on her ability to work, the Court finds the ALJ did

2    not err when she did not find Plaintiff's diabetes a severe impairment at Step Two. *See Smolen*, 80

3    F.3d at 1290.

4            C.    Shortness of Breath and Left Arm Swelling/Pain

5            Plaintiff also argues additional impairments of shortness of breath and left arm

6    swelling/pain should have been found severe at Step Two. Dkt. 11, p. 12. Plaintiff cites to medical

7    records wherein she complains of shortness of breath, *see* AR 384, 392, and left arm pain and

8    swelling, *see* AR 402, and argues these impairments amount to a severe impairment.  However,

9    Plaintiff cites to no evidence—nor has the Court found any evidence—that these alleged

10   impairments cause more than a minimal limitations on her ability to work. *See Smolen*, 80 F.3d at

11   1290. Thus, the Court finds the ALJ did not err in failing to find shortness of breath and left arm

12   swelling/pain severe impairments at Step Two.

13           D.    Additional Mental Health Impairments, Including Fatigue, Insomnia and PTSD

14           Plaintiff also asserts the ALJ should have found additional mental impairments severe at

15   Step Two, including fatigue, insomnia, and PTSD. *See* Dkt. 11, p. 11-13. With respect to mental

16   impairments, the ALJ observed Plaintiff "claimed a constellation of mental health symptoms,

17   resulting in various diagnoses for her mental health conditions …. [including] personality disorder,

18   post traumatic stress disorder, obsessive compulsive disorder, social phobia, panic disorder, and

19   agoraphobia." AR 16. The ALJ further observed:

20           The sequential disability analysis is not driven by diagnosis, but rather by
             functioning, and as discussed more thoroughly below, the undersigned has
21           considered all of the claimant's established symptoms and resulting functional
             limitations—regardless of the diagnostic label attached to them—in assessing the
22           claimant's maximum residual functional analysis.

23   AR 16.

24

1    Plaintiff reported insomnia in April 2014. AR 441. In addition, she complained of fatigue

2    on several occasions (*see* AR 390, 392, 407-08, 437, 428), which at least one doctor attributed to

3    her obesity. *See* AR 390-91. Plaintiff was also diagnosed with PTSD. *See* AR 435, 450. Despite

4    these additional reported symptoms and diagnoses, no doctors opined insomnia, fatigue, or PTSD

5    cause more than mild functional limitations regarding Plaintiff's ability to work. *See Smolen*, 80

6    F.3d at 1290. Thus, the ALJ did not err in failing to find these additional mental impairments

7    severe at Step Two.

8    **II.       Whether the ALJ Properly Determined Plaintiff Does Not Meet a Listing.**

9    Plaintiff asks the Court to determine Plaintiff is disabled at Step Three, finding she meets

10   Listing 12.06(A)(3)(B) due to panic attacks, based upon Dr. James Scaramozzino's opinion

11   Plaintiff "has marked to extreme difficulties in maintaining concentration, persistence, or pace, and

12   moderate to marked difficulties in maintaining social functioning." *See* Dkt. 11, p. 13 (citing AR

13   324).

14   At Step Three, the ALJ considers whether one or more of the claimant's impairments meets

15   or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. §

16   404.1520(a)(4)(iii). Each listing sets forth the "symptoms, signs, and laboratory findings" which

17   must be established in order for a claimant's impairment to meet the listing. *Tackett v. Apfel*, 180

18   F.3d 1094, 1099 (9th Cir. 1999). If a claimant meets or equals a listing, the claimant is considered

19   disabled without further inquiry. *See* 20 C.F.R. § 416.920(d).

20   Listing 12.06 pertains to anxiety-related disorders. 20 C.F.R. Part 404, Subpart P,

21   Appendix 1§ 12.06. In relevant part, the requirements of Listing 12.06(A)(3)(B) for anxiety-related

22   disorders are:

23   A. Medically documented findings of at least one of the following: ….

24

3.  Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; ….

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subp. P, App. 1 § 12.06 (formatting added). For the ALJ's decision to be affirmed at Step Three, the findings must be supported by substantial evidence. *See Tackett*, 180 F.3d at 1099. The burden of proof is on the claimant to establish a listed impairment is met or medically equaled. *See id.* at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

Here, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of a Listing. AR 16-17. With respect to her mental impairments, the ALJ determined Plaintiff has only mild limitations in activities of daily living, no episodes of decompensation, and moderate limitations in social functioning and concentration, persistence, or pace. The ALJ also rejected the opinion of Dr. Scaramozzino, rendered during Plaintiff's prior application for benefits, finding the opinion was inconsistent with evidence during the relevant period of disability. AR 18. Plaintiff challenges the ALJ's determination regarding her (A) social functioning, and (B) concentration, persistence, or pace. Plaintiff also challenges the ALJ's treatment of Dr. Scaramozzino's medical opinion. However, the Court finds the ALJ's decision finding Plaintiff does not meet a Listing is supported by substantial evidence.

A.   Social Functioning

Social functioning refers to a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00C(2). "Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* To find social functioning is a marked impairment, the Administration will examine "the nature and overall degree of interference with function." *Id.*

Here, with respect to social functioning, the ALJ determined:

> [T]he claimant has moderate difficulties. The claimant alleged limited social interaction, but that she got along 'good' with authority figures. She maintained a long term relationship with her husband and lived with several children. I also note that no source in the record opined that the claimant was not capable of some level of interaction with others, as discussed below.

AR 17 (citations omitted). With respect to Dr. Scaramozzino's opinion finding Plaintiff moderately to markedly impaired in social functioning, the ALJ determined the opinion which was "associated with the prior filing for benefits" was not "consistent with the record during the period at issue." AR 18.

First, Plaintiff argues "the evidence of record establishes that the claimant has recurrent severe panic attacks" and asks the Court to find Plaintiff meets Listing 12.06 related to her panic attacks and social functioning. Dkt. 11, p. 13. During the relevant period of disability, no doctors opined Plaintiff has marked functional limitations related to social functioning. However, during a consultative examination in December 2013, Dr. John Lloyd opined Plaintiff "could not do tasks involving significant social contact" and she has "serious psychological problems interfering with social and occupational functioning." AR 400-01. In addition, Plaintiff was diagnosed with Panic Disorder with Agoraphobia. *See* AR 434. Plaintiff also reported her family calls her "'Ghetto Mama' because she has anger issues, fights with neighbors, [and] daughter." AR 436. In contrast,

as noted by the ALJ, Plaintiff also reported a long-term marriage and living with her husband, children, and grandchild. AR 39, 225. Plaintiff reported that she gets along "good" with authority figures and listening to spoken instructions. AR 230-31. Although the ALJ could have found Plaintiff's social functioning marked based upon the record, "[t]hat the evidence could have supported a different conclusion from the one the ALJ drew does not prevent [her] finding from being supported by substantial evidence." *Thomas v. Comm'r of Soc. Sec. Admin.*, 480 F. App'x 462, 463 (9th Cir. 2012) (citing *Conahan v. Sebelius,* 659 F.3d 1246, 1250 (9th Cir. 2011)).

Second, Plaintiff argues the ALJ should have relied upon the medical opinion of Dr. Scaramozzino, who opined in August 2010 Plaintiff suffers moderate to marked social functioning. Dr. Scaramozzino's opinion was considered as part of Plaintiff's first application for disability benefits which was denied on December 3, 2010. *See* AR 318. After reviewing the opinion, the ALJ concluded  the prior "determination is final and will not be reopened." AR 13, 75. In addition, Plaintiff's alleged onset of disability in the current application is April 30, 2013, *see* AR 13, nearly three years after Dr. Scaramozzino issued his opinion regarding Plaintiff's limitations. *See* AR 318, 13. As discussed in Section III.A, *infra*, the ALJ did not err in discounting Dr. Scaramozzino's opinion because "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen,* 885 F.2d 597, 600 (9th Cir. 1989)); *see also Gunderson v. Astrue*, 371 F. App'x 807, 809 (9th Cir. 2010) (affirming Commissioner because the ALJ properly rejected the opinion of a doctor who conducted a psychological exam and offered an opinion "nearly two years before the alleged onset date of [Plaintiff's] disability"). Accordingly, the ALJ did not err by rejecting Dr. Scaramozzino's opinion, which was offered during the prior disability determination and nearly three years prior to the alleged onset of disability in the current application.

**B.   Concentration, Persistence, or Pace**

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00C(2). Concentration, persistence and pace will be defined as marked based upon "the nature and overall degree of interference with function." *Id.* For example:

> You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion. However, if you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00C(2).

With respect to concentration, persistence or pace, the ALJ determined Plaintiff has "moderate difficulties." AR 17. The ALJ noted:

> The claimant opined her ability to pay attention was 'good.' Upon testing in August 2010, the claimant's attention and concentration was satisfactory. Upon testing by the consultative evaluator in December 2013, the claimant was able to remember three of three words immediately and two of three after five minutes. She knew the name of the current and past presidents, but not the vice president. She knew the names of the states, country, and ocean adjacent to the state of Washington. She could spell the word world forward and backward correctly. Despite mistakes with serial threes and sevens, the evaluator concluded her persistence was adequate, but that she demonstrated slowed pace. However, he concluded that she was capable of simple tasks, indicating no more than moderate difficulties in this area. In April 2014, her concentration continued to be noted within normal limits.

AR 17 (citations omitted).

First, just as with social functioning, Plaintiff argues "the evidence of record establishes that the claimant has recurrent severe panic attacks" and asks the Court to find Plaintiff meets Listing 12.06 related to her panic attacks. Dkt. 11, p. 13. During the relevant period of disability,

however, no doctors opined Plaintiff has marked functional limitations related to concentration, persistence or pace. Indeed, during the consultative examination in December 2013, Dr. Lloyd noted Plaintiff has "adequate pace attention and concentration." AR 400. Based upon Plaintiff's reported hobbies, Dr. Lloyd opined Plaintiff has "adequate persistence, but slow pace." AR 400. Accordingly, the ALJ's decision finding Plaintiff has moderate difficulties with respect to concentration, persistence or pace is supported by substantial evidence. *See Brown v. Comm'r of Soc. Sec.*, 532 F. App'x 688, 689 (9th Cir. 2013) (affirming the Commissioner because the ALJ "properly rejected the testimony of 'some older (pre-current application) assessments' in favor of 'more recent' opinions").

Second, Plaintiff argues the ALJ erred in not relying upon the August 2010 opinion of Dr. Scaramozzino, who opined Plaintiff is markedly to extremely impaired with respect to concentration and attention. AR 324. However, as noted above, Dr. Scaramozzino's medical opinion, which predates the alleged onset date by nearly three years, is of limited probative value. *See Carmickle*, 533 F.3d at 1165. Accordingly, the ALJ did not err in rejecting the opinion and finding Plaintiff's panic disorder does not meet a Listing.

Finally, as noted above, Plaintiff bore the burden of establishing her severe impairments met a Listing. *See Tackett*, 180 F.3d at 1098. Other than citing a physician opinion which predates the alleged onset date by nearly three years, Plaintiff has offered no evidence establishing she meets a Listing related to her work limitations. Accordingly, the ALJ's decision finding Plaintiff does not meet a Listing is supported by substantial evidence.

### III.     Whether the ALJ Properly Evaluated the Medical Evidence.

Plaintiff also asserts the ALJ erred improperly rejected the medical opinions of James Scaramozzino, Ph.D., John T. Lloyd, Ph.D., and Gary Gaffield, D.O.

1    The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

2    opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

3    1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d

4    502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the

5    opinion can be rejected "for specific and legitimate reasons that are supported by substantial

6    evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043

7    (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish

8    this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

9    stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th

10   Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

11        A.   James Scaramozzino, Ph.D.

12        Dr. Scaramozzino examined Plaintiff on August 21, 2010. AR 318-25. On mental status

13   examination, Dr. Scaramozzino observed Plaintiff had good eye contact and her "facial

14   expressions were appropriate to the information provided and the clothing was casual and

15   presentable." AR 320. Dr. Scaramozzino noted Plaintiff's behavior was cooperative, but her

16   attitude was one of resignation. AR 320. As to intellectual functioning, Dr. Scaramozzino opined

17   Plaintiff "is moderately to markedly impaired primarily due to her pervasive pattern of social

18   inhibition and feelings of inadequacy and hypersensitivity to negative evaluation." AR 320.

19   Plaintiff's fund of knowledge was "consistent with her educational level and

20   socioeconomic/cultural background." AR 321. Plaintiff's judgment was within normal limits, and

21   she performed "satisfactorily on a gross indicator of rote learning and memory, attention encoding

22   and auditory processing." AR 321. Based upon his examination, Dr. Scaramozzino opined

23   Plaintiff's "symptom severity is considered to be in the moderate to severe range." AR 323. He

24

1   opined she has a number of functional limitations, including: (1) markedly to extremely impaired

2   ability to understand and remember detailed instruction, maintain concentration and attention,

3   complete a normal workday, and deal with changes in the workplace; and (2) moderately impaired

4   activities of daily living.

5        The ALJ assigned Dr. Scaramozzino's opinion "minimal weight" because: (1) it was

6   rendered in August 2010, nearly three years before the relevant period; (2) the opinion is

7   inconsistent with medical opinions during the relevant period; and (3) Plaintiff's subjective

8   complaints are not credible. The Court finds the ALJ's treatment of Dr. Scaramozzino's opinion is

9   supported by at least one specific and legitimate reason supported by substantial evidence.

10        First, the ALJ discounted Dr. Scaramozzino's opinion because it was rendered nearly three

11   years before the current disability period. As noted previously, "[m]edical opinions that predate the

12   alleged onset of disability are of limited relevance." *Carmickle*, 533 F.3d at 1165. Indeed, courts

13   have affirmed an ALJ's rejection of a medical opinion predating the alleged onset of disability,

14   including psychological opinions opining a claimant has greater functional mental limitations. *See*

15   *Gunderson*, 371 F. App'x at 809 (citing *Carmickle* and finding the ALJ did not err when

16   discounting the medical opinion of a doctor who conducted a psychological exam "nearly two

17   years before the alleged onset date of [Plaintiff's] disabilities"); *Fountaine v. Colvin*, No. 3:14-CV-

18   05035-KLS, 2014 WL 4436989, at *5 (W.D. Wash. Sept. 8, 2014) (affirming ALJ's rejection of

19   psychological opinions offered three years before alleged onset date); *Wa Wei Chong v. Colvin*,

20   No. CV 13-0226-DTB, 2014 WL 1407934, at *3 (C.D. Cal. Apr. 11, 2014) (finding medical

21   opinion with more restrictive mental functional limitations was of limited probative value because

22   it was offered over two years prior to the alleged onset date). This is particularly true where the

23   ALJ properly rejects an older medical opinion prior to the alleged onset of disability in favor of

24

1  more recent opinions during the relevant period. *Brown*, 532 F. App'x at 689; *Markey v. Colvin*,

2  No. C13-1393-JLR, 2014 WL 1320134, at *7 (W.D. Wash. Mar. 28, 2014) (affirming the ALJ's

3  treatment of older psychological opinions given that the ALJ considered more recent psychological

4  opinions after the alleged onset date). Here, the ALJ rejected Dr. Scaramozzino's older, more

5  restrictive psychological opinion in favor of the more recent opinions offered by Drs. Lloyd and

6  Clifford. Thus, the ALJ did not err in affording less weight to Dr. Scaramozzino's opinion given

7  that it was rendered nearly three years before the alleged onset of disability.

8      Second, the ALJ discounted Dr. Scaramozzino's opinion because it is "inconsistent with

9  both testing and her treatment history during the relevant period." AR 23. As noted above, a

10  medical opinion can be rejected "for specific and legitimate reasons that are supported by

11  substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citation omitted). In addition, an

12  older medical opinion can be properly rejected in favor of a newer medical opinion during the

13  relevant period of disability. *See Brown*, 532 F. App'x at 689. Here, however, the ALJ did not cite

14  to any evidence in the record inconsistent with Scaramozzino's opinion during the alleged period

15  of disability. *See* AR 23. Thus, the ALJ's statement lacks the specificity required by the Court, and

16  is insufficient to reject Dr. Scaramozzino's opinion. *See Embrey*, 849 F.2d at 421-22; *McAllister v.*

17  *Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (the ALJ's rejection of a physician's opinion on the

18  ground that it was contrary to clinical findings in the record was "broad and vague, failing to

19  specify why the ALJ felt the treating physician's opinion was flawed").

20      Third, the ALJ discounted Dr. Scaramozzino's opinion because the ALJ determined

21  Plaintiff's subjective complaints are not credible. AR 23. "An ALJ may reject a treating

22  physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been

23  properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

24

1    (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair*, 885

2    F.2d at 605)). However, "when an opinion is *not more heavily* based on a patient's self-reports than

3    on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*,

4    763 F.3d 1154, 1162 (9th Cir. 2014) (emphasis added) (citing *Ryan v. Comm'r of Soc. Sec.*, 528

5    F.3d 1194, 1199-1200 (9th Cir. 2008). Here, the record reflects Dr. Scaramozzino conducted a

6    mental status examination as well as charted Plaintiff's self-reports. Thus, nothing in the evidence

7    of record suggests Dr. Scaramozzino's opinion is based *more heavily* on Plaintiff's self-reports

8    than on his examination, and this reason for discounting Dr. Scaramozzino's opinion is not specific

9    and legitimate, supported by substantial evidence.

10       As the ALJ offered at least one specific and legitimate reason supported by substantial

11   evidence to discount Dr. Scaramozzino's opinion, the Court upholds the ALJ's determination. *See*

12   *Carmickle*, 533 F.3d at 1162.

13       B.  John T. Lloyd, Ph.D.

14       Dr. Lloyd performed a psychological evaluation of Plaintiff on August 27, 2013. AR 398-

15   401. He reviewed one medical record from Gary Gaffield, D.O., charted Plaintiff's self-reported

16   history, and conducted a mental status examination. *Id.* On mental status examination, Dr. Lloyd

17   described Plaintiff as passive with good eye contact and hesitant speech. AR 399. On memory

18   recall, Plaintiff recalled 3/3 words immediately and 2/3 after five minutes. *Id.* She spelled the word

19   "world" forward and backward, although she was slower spelling it backward. AR 399. Dr. Lloyd

20   opined Plaintiff has adequate attention and concentration based upon her performance with serial

21   three additions and serial seven subtractions. AR 399-400. Based upon her self-reported hobbies,

22   Dr. Lloyd opined Plaintiff has adequate persistence but slow pace. AR 400. Dr. Lloyd offered a

23   medical source statement, opining Plaintiff can perform simple tasks, would have difficulty with

24

tasks requiring a large amount of reasoning or judgment, and cannot perform tasks involving significant social contact. AR 401.

The ALJ afforded Dr. Lloyd's opinion "significant weight." AR 23. She determined:

Dr. Lloyd opined the claimant was capable of simple tasks, which would not involve the 'great deal of reasoning and judgment' with which he opined she would struggle. Additionally, he opined that she was not capable of performing tasks involving 'significant social contact,' also consistent with the finding above.

AR 23 (citations omitted).

Plaintiff argues the ALJ erred in her treatment of Dr. Lloyd's opinion by failing to specifically address "numerous findings made by Dr. Lloyd … [including Plaintiff's] impaired social and occupational functioning, the longstanding nature of her mental health conditions, and her prognosis …" Dkt. 11, pp. 10-11. In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. *See Crane v. Shalala,* 76 F.3d 251, 255 (9th Cir.1996). In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923. However, in interpreting the evidence and developing the record, the ALJ does not need to "discuss every piece of evidence." *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998); *see also Vincent v. Heckler,* 739 F.2d 1393, 1394–95 (9th Cir.1984). Here, in Plaintiff's residual functional capacity ("RFC"), the ALJ included limitations addressing each of Dr. Lloyd's opined limitations, including limiting Plaintiff to "simple routine tasks with no contact with the public and occasional superficial contact with coworkers." AR 18. The ALJ also determined Plaintiff needs a "stable or unchanging work environment." AR 18. Plaintiff has not cited to any—nor has the Court found any—additional limitations opined by Dr. Lloyd which the ALJ failed to incorporate into the RFC. *See* Dkt. 11. Thus, the Court finds the ALJ did not err in her treatment of Dr. Lloyd's medical opinion.

C.   Gary Gaffield, D.O.

Dr. Gary Gaffield performed a physical examination of Plaintiff on August 27, 2013. AR 384-88. He observed Plaintiff was "pleasant, obese … oriented x3 … [with] normal vital signs." AR 387. He opined Plaintiff has no limitations related to standing, walking, or sitting in an eight-hour day. AR 388. He also opined Plaintiff can carry 20 pounds occasionally and 10 pounds frequently, and she should avoid postural activities "due to her obesity and her heart issues." AR 388. Finally, as to environmental limitations, Dr. Gaffield noted Plaintiff should "avoid heights and heavy equipment, stairs and ladders, obstacles in her pathway, extremes in temperatures, exposure to gases, chemicals, and fumes." AR 388.

The ALJ adopted Dr. Gaffield's opinion as to Plaintiff's environmental limitations. AR 23. However, the ALJ assigned minimal weight to the opined restriction regarding Plaintiff's postural limitations, finding the limitation inconsistent with Plaintiff's examination and the record as a whole. AR 23.

First, the ALJ rejected Dr. Gaffield's opinion as to Plaintiff's postural limitations, noting "I did not find his restriction to 'no' postural movements, including the avoidance of stair climbing, consistent with the record, including his own examination which was entirely normal." AR 23 (citing Dr. Gaffield's examination at AR 388). Discrepancies between the functional assessment of a medical opinion source and that source's clinical notes, recorded observations and other comments regarding a claimants capabilities "is a clear and convincing reason for not relying" on the assessment. *Bayliss*, 427 F.3d at 1216; *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989).

Here, during Plaintiff's examination, Dr. Gaffield observed Plaintiff was "within normal limits" on range of motion, including her spine. AR 387. He also found Plaintiff was able to "get

1  on and off the exam table without complaint and was able to recline and transfer from supine to

2  sitting without complaint, struggle or assistance" AR 387. Plaintiff's spine had a full range of

3  motion, with no pain or trigger points. AR 386. Thus, the record demonstrates the ALJ properly

4  rejected Dr. Gaffield's opinion regarding Plaintiff's postural limitations given his unremarkable

5  exam findings.

6         Second the ALJ rejected Dr. Gaffield's opinion as inconsistent with the evidence of record.

7  AR 23. Although a medical opinion can be rejected "for specific and legitimate reasons that are

8  supported by substantial evidence in the record", *see Lester*, 81 F.3d at 830-31 (citation omitted),

9  the ALJ did not cite to any evidence in the record inconsistent with Dr. Gaffield's opinion. *See* AR

10 23. Thus, the ALJ's statement lacks the specificity required by the Court, and is insufficient to

11 reject Dr. Gaffield's opinion. *See Embrey*, 849 F.2d at 421-22; *McAllister v. Sullivan*, 888 F.2d

12 599, 602 (9th Cir. 1989) (the ALJ's rejection of a physician's opinion on the ground that it was

13 contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt

14 the treating physician's opinion was flawed"). Nevertheless, including an erroneous reason for

15 rejecting a medical opinion among other reasons is harmless error where the other reasons are

16 supported by substantial evidence and the erroneous reason does not negate the validity of the

17 overall determination. *See Carmickle*, 533 F.3d at 1162. As noted above, the Court finds the ALJ

18 properly rejected the portion of Dr. Gaffield's opinion regarding Plaintiff's postural limitations as

19 inconsistent with his unremarkable examination. Thus, because rejection of this portion of Dr.

20 Gaffield's opinion was specific and legitimate, the Court finds the ALJ's treatment of Dr.

21 Gaffield's opinion is supported by substantial evidence.

22

23

24

**IV.    Whether the ALJ Properly Evaluated Plaintiff's Credibility.**

Plaintiff also argues the ALJ improperly rejected her testimony and symptoms. *See* Dkt. 11, pp. 13-17. To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ may also consider if a claimant's complaints are "inconsistent with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where the determination is based on contradictory or ambiguous evidence. *Id.* at 579.

In this case, the ALJ found Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms to be not entirely credible. AR 20. First, the ALJ determined Plaintiff's "physical and mental limitations are inconsistent with the longitudinal treatment records." AR 20. Second, the ALJ determined Plaintiff's "non-compliance with regard to medication treatment [] also undermines her credibility." AR 21. Third, the ALJ found Plaintiff's activities of daily living undermine her allegations. AR 21. Fourth, the ALJ determined Plaintiff's

1  minimal work history "may create barriers to employment unrelated to the claimant's severe

2  impairments." AR 22. Plaintiff argues the ALJ improperly rejected her symptoms and testimony.

3  The Court disagrees.

4        First, the ALJ determined Plaintiff's "physical and mental limitations are inconsistent with

5  the longitudinal treatment records." AR 20. A determination that a claimant's complaints are

6  "inconsistent with clinical observations" can satisfy the clear and convincing requirement.

7  *Regennitter*, 166 F.3d at 1297; *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011).

8  Here, the ALJ observed "[w]hile the record includes complaints of chest pain beginning in 2011

9  and a low ejection fracture measurement in May 2012, records during the relevant period indicate

10  improvement and stabilization of her cardiac impairments …. [which] is inconsistent with the

11  claimant's allegations, including disabling fatigue and use of a wheelchair and motorized cart." AR

12  20. The ALJ also determined Plaintiff's cardiac condition "continued to stabilize, contrary to

13  [Plaintiff's] allegations at the hearing." AR 20. To support her determination, the ALJ cited to a

14  litany of records demonstrating doctors' opinions of Plaintiff's improved cardiac condition. *See*

15  AR 20. The ALJ also found "[t]he longitudinal record is also inconsistent with the claimant's

16  mental allegations. The claimant alleged a long history of depression and anxiety and, despite

17  referrals, did not present for mental health treatment during the relevant period until February

18  2014." AR 21. The medical records cited by the ALJ demonstrate substantial evidence supports the

19  ALJ's determination finding Plaintiff's allegations of disabling symptoms inconsistent with the

20  longitudinal treatment record. Thus, the ALJ did not err in discounting Plaintiff's testimony and

21  complaints on this basis.

22        Second, the ALJ determined Plaintiff's "non-compliance with regard to medication

23  treatment [] also undermines her credibility." AR 21. The Commissioner can find a claimant lacks

24

1   credibility if "the level or frequency of treatment is inconsistent with the level of complaints, or if

2   the medical reports or records show that the individual is not following the treatment as prescribed

3   and there are no good reasons for this failure." Social Security Ruling ("SSR") 96-7p, 1996 WL

4   374186, *7; *see also Tommasetti*, 533 F.3d at 1039-40 (9th Cir. 2008). But, when a mental illness

5   is involved, because a person suffering from a mental illness may not realize that he needs his

6   medication, or he may not even realize that his "condition reflects a potentially serious mental

7   illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "'[I]t is a questionable

8   practice to chastise one with a mental impairment for the exercise of poor judgment in seeking

9   rehabilitation.'" *Id.* (quoting with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.

10  1989)). In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 16-3p, the

11  Administration will not find a claimant's symptoms are inconsistent with the evidence in the record

12  on the basis that the frequency or extent of treatment sought by an individual is not comparable

13  with the degree of the alleged limitations "without considering possible reasons he or she may not

14  comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR

15  16-3P, 2016 WL 1119029, at *7.

16      Here, the ALJ discounted Plaintiff's testimony of disabling mental impairments because

17  Plaintiff refused to take psychotropic medications, except benzodiazepines. The ALJ determined

18  Plaintiff's "non-compliance and lackadaisical approach to mental health treatment undermines the

19  credibility of her allegations." AR 21. The ALJ erred in finding Plaintiff's failure to take

20  medications for mental health reflected poorly on her credibility, which is precisely the kind of

21  finding the Ninth Circuit cautions against. *See Van Nguyen*, 100 F.3d at 1465. In addition, although

22  the ALJ noted Plaintiff decided not to take anti-depressants because she felt her depression was "in

23  good control", *see* AR 21 (citation omitted), the ALJ failed to address Plaintiff's other reason for

24

not taking medication: phobia of taking psychotropic medication. *See* AR 446. The ALJ should

have considered the "possible reasons [a plaintiff] may not comply with treatment or seek

treatment consistent with the degree of his or her complaints." SSR 16-3P, 2016 WL 1119029, at

*7. Thus, the ALJ erred in discounting Plaintiff's testimony based upon her failure to take

medication.

Third, the ALJ found Plaintiff's activities of daily living undermine her allegations. AR 21.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or

her daily activities. *Smolen*, 80 F.3d at 1284. The Ninth Circuit has recognized "two grounds for

using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue,* 495

F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work

skills." *Id.* Thus, a claimant's credibility may be discounted if he or she "is able to spend a

substantial part of his or her day performing household chores or other activities that are

transferable to a work setting." *Smolen*, 80 F.3d at 1284 n. 7. "Even where those activities suggest

some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Under the second ground in *Orn*, a claimant's activities of daily living can "contradict his other

testimony." *Orn*, 495 F.3d at 639.

Here, the ALJ determined "[t]he extent of the claimant's activities is also in strong contrast

to her allegations at the hearing." AR 21. The ALJ listed a number of inconsistencies between

Plaintiff's testimony and her activities of daily living. *See id.* For example, the ALJ noted Plaintiff

reported at the hearing staying in her bedroom 100% of the time and rarely leaving the house, but

in January, March, and April 2014, reported cleaning her house, taking walks, and making dinner.

AR 21. In contrast to Plaintiff's testimony stating she sleeps and watches TV all day, the ALJ also

1 observed Plaintiff reported caring for her new grandchild and reported using her computer to

2 research anxiety medication, play games, and communicate with her mother. AR 22. In short, the

3 ALJ's determination Plaintiff's activities of daily living contradict her other testimony is supported

4 by substantial evidence and the record as a whole. *Orn*, 495 F.3d at 639. Thus, the ALJ did not err

5 in discounting Plaintiff's testimony on this basis.

6       Fourth, the ALJ determined Plaintiff's minimal work history "may create barriers to

7 employment unrelated to the claimant's severe impairments." AR 22. Evidence of a poor work

8 history suggesting a claimant is not motivated to work can be a proper reason to discredit a

9 claimant's testimony that he is unable to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

10 2002); *Tommasetti*, 533 F.3d at 1040 (finding lack of motivation to work is a sufficient reason to

11 discount a plaintiff's testimony); *see also Franz v. Colvin*, 91 F. Supp. 3d 1200, 1209-10 (D. Or.

12 2015) (holding the same). Here, the ALJ noted one treatment provider "characterized the

13 claimant's attitude for seeking employment as 'poor'". AR 22 (citation omitted). The ALJ also

14 noted Plaintiff reported not seeking work because "my husband always provided." AR 23 (citation

15 omitted). The ALJ implies Plaintiff's lack of motivation to work reflects poorly on her claims of

16 disabling limitations. *Magallanes*, 881 F.2d at 755 (The reviewing court is "not deprived of [its]

17 faculties for drawing specific and legitimate inferences from the ALJ's opinion."). As an ALJ may

18 properly consider lack of motivation to work in assessing a claimant's credibility, the ALJ did not

19 err in considering Plaintiff's lack of motivation in assessing her allegations of disabling limitations.

20       If the overall credibility finding is supported by substantial evidence in the record, the

21 ALJ's determination is not invalid simply because one reason for discounting Plaintiff's credibility

22 was improper. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ gave three

23

24

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 24

1   valid reasons for finding Plaintiff lacked credibility. *See* AR 20-22. Accordingly, the ALJ's overall

2   credibility decision is supported by substantial evidence in the record.

3           **V.**       **Whether the ALJ Erred At Step Five.**

4           Finally, Plaintiff includes a conclusory argument challenging the ALJ's determination at

5   Step Five finding Plaintiff capable of performing work existing in the national economy. Dkt. 11,

6   pp. 17-18. Plaintiff argues the hypothetical posed to the vocational expert was incomplete and the

7   ALJ "neglected to include all of [Plaintiff's] limitations in the hypothetical." Dkt. 11, p. 17.

8   However, the RFC is identical to the hypothetical posed to the vocational expert. *Compare* AR 18

9   *with* AR 59. Thus, Plaintiff's argument appears premised entirely on her other arguments alleging

10   the ALJ erred in finding her not disabled. *See* Dkt. 11, pp. 17-18. As the Court has already

11   determined the ALJ's disability determination is supported by substantial evidence, the Court find

12   the ALJ did not err at Step Five.

13                             CONCLUSION

14           Based on the foregoing reasons, the Court hereby finds the ALJ properly concluded

15   Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is affirmed and this

16   case is dismissed with prejudice.

17           Dated this 28th day of September, 2016.

18

19

20                             David W. Christel
                              United States Magistrate Judge

21

22

23

24